# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LENNIS B. REYNOLDS**

    Petitioner,

  v.                                                             Case No. 16-CV-112

**ROBERT HUMPHREYS,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Lennis B. Reynolds, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Reynolds alleges that his conviction for first-degree reckless injury is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

In October 2009, Reynolds was charged with attempted first-degree intentional homicide by use of a dangerous weapon as a repeater and party to crime of delivery of marijuana, second or subsequent offense. (*State v. Reynolds,* 2014AP1531 (Wis. Ct. App. April 15, 2015), Docket # 15-3 at 2.) In a separate criminal complaint, Reynolds was also charged with two counts of delivery of cocaine as a repeater. (*Id.*)

The parties negotiated a plea agreement. (*Id.*) At the plea hearing, the court granted Reynolds an adjournment of a week to allow him and his attorney time to meet because Reynolds still had questions. (*Id.*) Ultimately, per the plea agreement, Reynolds pled no contest to an amended charge of first-degree recklessly endangering safety, without the

penalty, and guilty to possession with intent to deliver cocaine. (*Id.*) Reynolds signed a plea questionnaire/waiver of rights form. (Docket # 15-2 at 58–59.) Attached to the plea questionnaire were two pages containing the elements of the offenses that Reynolds pled guilty to. (*Id.* at 60–61.) At the change of plea hearing, the judge asked Reynolds' counsel whether Reynolds understood the elements of the offenses:

> THE COURT: Mr. Jensen, have you had the opportunity to go through the elements of each offense that your client is pleading to?
>
> MR. JENSEN: I have.
>
> THE COURT: Does he understand those elements?
>
> MR. JENSEN: I believe he does.
>
> THE COURT: Do you believe he's freely and voluntarily changing his plea at this time?
>
> MR. JENSEN: I believe he is.
>
> THE COURT: And just for the record, apparently, you've had a—your client was given a week to think about this. You've talked to him about it, and you feel you've had adequate time to talk to him about it?
>
> MR. JENSEN: Yes. I believe so. We've talked on a couple different occasions since the last court date.

(Docket # 15-3 at 500–01.) The judge did not ask Reynolds directly if he understood the elements of the offenses. (*Id.*) Reynolds then entered his pleas, which the judge accepted. (*Id.* at 501–02.)

In April 2010, the judge sentenced Reynolds to twenty-five years of imprisonment consisting of fifteen years of initial confinement followed by ten years of extended supervision on the reckless injury charge. On the cocaine possession charge, the judge

sentenced Reynolds to six years of imprisonment consisting of three years of initial confinement followed by three years of extended supervision. (*Id*. at 534.)

Subsequent to his sentencing, Reynolds' first appointed postconviction counsel filed a no-merit report. (Docket # 15-3 at 3.) In February 2012, the Wisconsin Court of Appeals rejected the no-merit report and extended the deadline for filing a postconviction motion. (Docket # 15-2 at 238–39.) Reynolds filed a motion to withdraw his guilty plea on the grounds that the plea colloquy was defective. (Docket # 15-3 at 3.) After conducting an evidentiary hearing on the motion, the circuit court denied it. Reynolds appealed. (*Id*.) While the appeal was pending, Reynolds successfully moved to voluntarily dismiss the appeal and reinstate his original postconviction/appellate rights. (*Id*.)

Reynolds then filed another motion to withdraw his guilty plea on the ground that the court had not explained the "essential nature" of the offense to him during the plea colloquy or asked him if he understood the elements, but instead relied on his attorney's statement that he had explained them to Reynolds. (*Id*.) Reynolds alleges that he had entered his plea without understanding the concept of criminally reckless conduct. (*Id*.)

The circuit court held a second evidentiary hearing at which both Reynolds' trial counsel and Reynolds testified. Trial counsel testified that although he did not have a specific memory of all their conversations, his notes reflected having met with Reynolds eleven times, several meetings lasting at least an hour. (*Id*.) He also testified that he "would have explained" criminally reckless conduct to Reynolds because there are a lot of things that are not on the element sheet or the plea questionnaire about which he goes into more detail and discusses with clients when they have questions or to make it clear to them. (*Id*.)

Trial counsel further testified that Reynolds was not shy about asking questions. Trial counsel described his standard practice as follows:

> I usually continue to ask people if they have any questions, if they understand, if—if there's something that's not clear. That's just a practice I have with all [clients] from like a disorderly conduct on up. So I would have inferred if he wasn't asking a lot of questions from there, the inference to me would have been that he understood what was going on.

(*Id*. at 3.)

Reynolds testified that his attorney "never explained anything" to him, including the plea questionnaire or elements of the offense, and "never told me that by pleading no contest, that I was giving up my rights." (*Id.* at 4.) Reynolds further testified that he never saw the element sheet, did not understand the concept of criminal recklessness, met with his attorney "probably about two to four times" for only a few minutes after which his attorney would turn his "attention to other people . . . in the pod area," and that he did not understand that a no-contest plea would result in a finding of guilt. Finally, although Reynolds acknowledged that he has entered no-contest pleas to past crimes, he testified that he had no understanding of what they meant.

The court denied Reynolds' motion to withdraw his plea. The court found that the State met its burden of proving that Reynolds understood the nature of the offense. The court found that trial counsel's testimony about his usual procedures and the details of his meetings with Reynolds was credible evidence that Reynolds was well advised of and clearly understood the elements of the charge. The court concluded that Reynolds knowingly, intelligently, and voluntarily entered his no-contest plea to first-degree reckless injury. The court also found that the complaint contained sufficient detail to serve as a

proper factual basis for finding that Reynolds acted in a criminally reckless manner. (*Id*. at 4.)

Reynolds appealed and the Wisconsin Court of Appeals affirmed the circuit court's order denying the postconviction motion. (*Id*. at 8.) The Wisconsin Supreme Court denied Reynolds' petition for review on August 5, 2015. Reynolds timely filed a petition for writ of habeas corpus on January 29, 2016.

## STANDARD OF REVIEW

Reynolds' petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Reynolds argues that he is entitled to habeas relief because his no-contest plea to first-degree reckless injury was not knowingly and voluntarily made. During the plea hearing, the trial judge began by asking both Reynolds' counsel and the prosecutor to summarize the plea agreement. (Docket # 15-3 at 2–3.) In his colloquy with Reynolds, the judge asked Reynolds about his age, education, and ability to read, write, and understand

6

English. (*Id*. at 3.) Reynolds confirmed that he was twenty-six years old, had a GED, and could read, write, and understand English. (*Id.*) The judge asked Reynolds if he understood that he would be pleading to two felonies: first-degree reckless injury which carries a maximum sentence of twenty-five years, a $100,000 fine, or both, and possession with intent to deliver cocaine less than one gram which carries a maximum penalty of ten years of imprisonment, a $25,000 fine, or both. Reynolds answered that he understood. (*Id.* at 4.) The judge asked Reynolds if he was currently receiving treatment for mental illness or disorder. Reynolds indicated that he was not. The judge asked Reynolds if he had had any alcohol, medications, or drugs within the last twenty-four hours. Reynolds indicated that he had not. (*Id*.)

The judge then explained to Reynolds his jury trial rights and asked him if he understood his rights. (*Id.*) Reynolds indicated that he understood. The judge also asked Reynolds if he understood that he was giving up his trial rights. Reynolds responded that he understood. (*Id.* at 5.) The judge also asked Reynolds whether anyone was forcing him to give up his rights. Reynolds answered "no." (*Id.*)

After addressing Reynolds directly, the judge then asked Reynolds' counsel whether he had the opportunity to go through the elements of each offense with Reynolds. Counsel answered that he had. (*Id*. at 6.) The judge further asked counsel whether Reynolds understood the elements. Counsel answered that he believed Reynolds understood. The judge asked counsel whether he believed that Reynolds was freely and voluntarily changing his plea and whether he had sufficient time to discuss the matter with Reynolds. Counsel answered that he believed that Reynolds was entering his plea freely and voluntarily and that they had had sufficient time to discuss the matter. (*Id.*)

7

The crux of Reynolds' claim for relief is that the trial judge did not personally address him to determine whether he understood the elements of the offense; rather, the trial judge addressed his attorney. Specifically, Reynolds cites to Wis. Stat. § 971.08(1), which requires that before the court accepts a plea of guilty or no contest, it address "the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." However, that the court did not follow state law is not a basis to grant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Rather, to be entitled to federal habeas relief, Reynolds must show that the court of appeals' decision rejecting his claim that his plea was constitutionally defective was either contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. Reynolds fails to meet this burden. A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). "Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." *Id*. The Supreme Court has indicated that adequate notice of the offense to which a defendant pleads can be satisfied either by "an explanation of the charge by the trial judge or at least a representation by defense counsel that the nature of the offense has been explained to the accused." *Id*. at 647.

In addressing Reynolds' challenge to his plea, the court of appeals noted that "a violation of Wis. Stat. § 971.08 by itself is not constitutionally significant." (Docket # 15-3 at 6.) The court of appeals further found that the record contained clear and convincing evidence from the two postconviction motion evidentiary hearings that trial counsel had thoroughly discussed with Reynolds the nature of first-degree reckless injury before he entered his plea. (*Id.*) The court of appeals noted that trial counsel had testified about numerous meetings at which he carefully reviewed the elements of the offense, the potential penalties, and the plea questionnaire and that he answered Reynolds' questions and verified Reynolds' understanding. (*Id.*)

The court of appeals rejected Reynolds' claim that he was not advised of the "concept" of criminally reckless conduct. The court of appeals reasoned that going through the elements is explaining the concept. (*Id.* at 7.) In making its determination, the court of appeals adopted the trial court's findings that Reynolds' counsel had conferred with Reynolds, that Reynolds understood the elements, and that Reynolds freely and intelligently entered his no-contest plea. (*Id.* at 6–7.)

Reynolds does not show that the court of appeals' conclusion contravenes federal law or unreasonably determined the facts in light of the evidence. Again, the Supreme Court has indicated that adequate notice of the offense to which a defendant pleads could be satisfied either by "an explanation of the charge by the trial judge or at least a representation by defense counsel that the nature of the offense has been explained to the accused." 426 U.S. at 647. Here, as discussed above, the court of appeals found that the record supports that trial counsel had explained the elements to Reynolds and that Reynolds understood them.

In his reply brief, Reynolds cites to Federal Rule of Criminal Procedure 11. (Docket # 23.) This rule, however, does not support habeas relief for Reynolds as it governs pleas in federal court, not state court. Moreover, as discussed above, the question here is whether the court of appeals' decision was contrary to clearly established federal law. Because Reynolds has not shown that it was, he is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Reynolds is not entitled to habeas relief. Thus, I will deny Reynolds a certificate of appealability. Of course, Reynolds retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of December, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge